## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## FORT MYERS DIVISION

DON H. MERGLER, II,

        Plaintiff,

v.                              Case No:   2:16-cv-165-FtM-38CM

ABF FREIGHT SYSTEM, INC.,

        Defendant.

_____

## ORDER

This matter comes before the Court upon review of Plaintiff's Motion to Compel (Doc. 19) filed on September 19, 2016.   Defendant opposes the requested relief.   Doc. 20.

### I.   Background

On February 29, 2016, this case was removed from the Circuit Court of the Twentieth Judicial Circuit in and for Collier County, Florida to the United States District Court for the Middle District of Florida.   Doc. 1.   Defendant is a corporation engaged in freight shipping throughout the United States.   Doc. 19 at 2. Defendant's business operations consist of several thousand employees, trucks, and trailers and of multiple terminals located in eleven (11) regions.   *Id.*   Each region is headed by a Regional Vice President of Sales and a Regional Vice President of Operations.   *Id.*   Plaintiff was a former employee of Defendant, who was sixty-two (62) years old when he filed the Complaint with this Court.   Doc. 2 ¶¶ 4-7.

The Complaint alleges that Plaintiff began working for Defendant in or around 1996 at Defendant's Miami terminal and achieved a position of Operations Supervisor before his termination on June 10, 2014.   *Id.* ¶¶ 6-7; Doc. 19 at 2. Plaintiff asserts that on or about December 2013, David Martinez became Plaintiff's new supervisor and began to continually criticize Plaintiff's performance and to falsely accuse Plaintiff of improper job performance.   Doc. 2 ¶¶ 9-10.   Plaintiff filed this action against Defendant under the Age Discrimination in Employment Act ("ADEA") on the ground that Defendant discriminated against Plaintiff on the basis of his age.   *Id.* ¶¶ 16-21.

Defendant argues that on June 10, 2014, Plaintiff confronted Keith Clapner, the Branch Manager for Defendant's Miami terminal, in an angry manner regarding Plaintiff's supervisor.   Doc. 20 at 2.   Defendant alleges that during the confrontation, Plaintiff made rude comments and displayed an "unprofessional and insubordinate behavior," which caused Mr. Clapner to recommend Plaintiff's termination to the Regional Vice President of Operations and the Director of Human Resources.   *Id.* at 2-3; Doc. 6 ¶ 9.   Plaintiff's termination was approved the same day.   Doc. 20 at 3.

## II.   Discussion

On March 25, 2016, Plaintiff served his First Set of Interrogatories and First Request for Production to Defendant.   Doc. 19 at 1.   On March 9, 2016, Defendant served its responses to the discovery requests.   *Id.*   Plaintiff seeks to compel Defendant's production of documents in response to Plaintiff's First Request for

Production No. 12.   *Id.* at 7.   Request No. 12 seeks "[a]ny disciplinary records (coachings, counselings, suspension records, termination records, forms, notes, logs, computer printouts, etc.) of Operations Supervisors identified in [Defendant's] answers to Interrogatory No. 12 of Plaintiff's First Set of Interrogatories, for insubordination."   Doc. 19-2 at 6.   Interrogatory No. 12 seeks to "identify all Operations Supervisors employed during the last three (3) years at [Defendant's] terminals/branches/facilities listed in response to Interrogatory No. 11(b)."   Doc. 19-1 at 12.   Interrogatory No. 11(b) asks for the addresses of Defendant's all terminals/branches/facilities currently in business located in the region where Plaintiff was previously employed.   *Id.* at 11.   In summary, Plaintiff seeks to discover all disciplinary records of all Operations Supervisors who worked for Defendant during the past three (3) years in the region where Plaintiff previously had worked.   *Id.* at 11-12.

In response to Interrogatory No. 11(b), Defendant originally objected on various grounds, including that the question is vague, ambiguous, overly broad, unduly burdensome, not likely to lead to the discovery of admissible evidence, and not narrowly tailored to the relevant geographic area or time period.   Doc. 19-3 at 9. Subject to the same objection, Defendant later revised its responses to Interrogatory No. 11 and provided Defendant with a map of Defendant's regional offices and centers.   Doc. 19-6.   In response to Interrogatory No. 12, Defendant also objected on various grounds and still provided Defendant with the information regarding the Operations Supervisors employed at Defendant's Miami terminal.   Doc. 19-3 at 9-10.

With respect to Request No. 12, Defendant objected that the question is vague and ambiguous to the extent it describes disciplinary records, overly broad, unduly burdensome, not likely to lead to the discovery of admissible evidence,[1] not narrowly tailored to the relevant geographic area or time period, and disproportionate to the needs of the case.   Doc. 19-4 at 6-7.   Furthermore, Defendant argued that this question seeks information protected by the attorney-client privilege and/or work-product doctrine.   *Id.* at 7.

Plaintiff alleges that his Request No. 12 seeking the information of his comparators is necessary to develop his case and establish the pretextual nature of Defendant's conduct.   Doc. 19 at 6.   First, Plaintiff argues that, in an employment discrimination context, Plaintiff can shift a burden of proof to Defendant by showing four factors from *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).   *Id.* at 5. Plaintiff asserts that included in this framework is Plaintiff's burden to demonstrate that Defendant's offered reasons were not true reasons, but pretext for discrimination.   *Id.*   According to Plaintiff, he can establish pretext by showing that his comparators engaged in misconduct similar to Plaintiff's were treated more favorably than him.   *Id.*   Second, Plaintiff alleges that he can show Defendant's discriminatory intent using circumstantial evidence regarding other employees.   *Id.*

---

[1] Effective December 1, 2015, the phrase "reasonably calculated to lead to the discovery of admissible evidence" is no longer part of Rule 26(b)(1).   "The former provision of [Rule 26(b)(1)] for discovery of relevant but inadmissible information that appears 'reasonably calculated to lead to the discovery of admissible evidence' is [] deleted."   Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment.

Plaintiff argues that Request No. 12 will provide evidence of pretext and circumstantial evidence for Defendant's discriminatory intent by revealing whether other employees engaged in similar conduct as Plaintiff are disciplined different ways. *Id.* at 8.

Defendant objects to this argument on the ground that the discovery request is not relevant to Plaintiff's claims and is overly burdensome and disproportionate to the needs of the case. Doc. 20 at 6. First, Defendant asserts that the discovery request is relevant only if Plaintiff can show that other Operations Supervisors are his proper comparators. *Simionescu v. Bd. of Trs. Of Univ. of Ala.*, 482 F. App'x 428, 431 (11th Cir. 2012). Defendant argues that the scope of Plaintiff's discovery request should be limited to Defendant's Miami terminal because Keith Clapner, the Branch Manager for the Miami terminal, recommended the termination of Plaintiff.[2] *Id.* at 8. Furthermore, Defendant asserts that the discovery request is overly broad because it seeks various types of disciplinary records regardless of whether other Operations Supervisors actually were disciplined. *Id.* Lastly, Defendant alleges that the discovery request is unduly burdensome because Region 4 where Plaintiff previously was hired has twenty-seven (27) terminals and approximately ninety-two (92) Operations Supervisors employed in the last three (3) years. *Id.* at 9. To produce responsive documents, Defendant has to conduct a tedious review of 200 personnel files. *Id.*

---

[2] Plaintiff argues that he is entitled to the records from the entire region because the Regional Vice President and the Human Resources Director made the decision to terminate Plaintiff. Doc. 19 at 10.

Defendant does not re-assert its objection based on the attorney-client or work-product privilege in its response to the motion to compel (Doc. 19).   Doc. 19-4 at 7; Doc. 20.   Objections timely asserted in a party's initial response to discovery requests but not reasserted or argued in response to a motion to compel are deemed abandoned.   *Jackson v. Geometrica, Inc.*, No. 3:04CV640J20HTS, 2006 WL 213860, at *1 (M.D. Fla. Jan. 27, 2006); *DIRECTV, Inc. v. Puccinelli*, 224 F.R.D. 677, 681 n. 8 (D. Kan. 2004); *See also Auto Owners Ins. Co. v. Totaltape, Inc.*, 135 F.R.D. 199, 201 (M.D. Fla. 1990) (finding an initial objection abandoned when the response brief to the motion to compel did not discuss the objection).

Rule 33 of the Federal Rules of Civil Procedure sets forth the procedures for obtaining access to documents and things within the control of the opposing party. Fed. R. Civ. P. 34.   Rule 34(a) allows a party to serve on any other party a request within the scope of Rule 26(b).   Fed. R. Civ. P. 34(a).   Rule 26(b) permits discovery

> regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery, in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).   Relevancy is determined based on the "tendency to make a fact more or less probable than it would be without the evidence, and the fact is of consequence in determining the action."   Fed. R. Evid. 401.   A request for production must state "with reasonable particularity each item or category of items to be inspected."   Fed. R. Civ. P. 34(b)(1)(A).   The party to whom the request is

directed must respond within thirty days after being served, and "for each item or category . . . must state with specificity the grounds for objecting to the request, including the reasons."   Fed. R. Civ. P. 34(b)(2).   Furthermore, "[a]n objection must state whether any responsive materials are being withheld on the basis of that objection."   Fed. R. Civ. P. 34(b)(2)(C).   When a party fails to produce documents as requested under Rule 34, the party seeking the discovery may move to compel the discovery.   Fed. R. Civ. P. 37(a)(3)(B)(iv).

Here, the Court finds persuasive Plaintiff's argument that Defendant should be compelled to produce responsive documents to Request No. 12.   First, Plaintiff is correct that in ADEA cases, the courts employ the framework from *McDonnell Douglas*, which allows a plaintiff shift the burden of proof to a defendant. *Washington v. United Parcel Serv., Inc.*, 567 F. App'x 749, 751-52 (11th Cir. 2014). Under the *McDonnell Douglas* framework, the plaintiff may establish a prima facie case by showing four factors: he was (1) a member of the protected age group, (2) subject to adverse employment action, (3) qualified to do the job, and (4) replaced by a younger individual, or that his employer treated employees who were not members of his protected class more favorably under similar circumstances.   *Id.* at 751.

To show a valid comparison, the plaintiff must show that he and "the comparators are similarly situated in all relevant aspects."   *Id.* at 751.   The burden of finding a proper comparator is relatively high because "the quantity and quality of a comparator's misconduct must be nearly identical to the plaintiff's misconduct." *Id.* at 751-52.   Once the plaintiff establishes a prima facie case, the burden shifts to

the defendant to proffer a "legitimate, nondiscriminatory reason for taking the challenged employment action." *Id.* at 752. The plaintiff then must "demonstrate that the proffered reason was a pretext for discrimination." *Id.* Relevant to showing a pretext would be evidence that other employees who engaged in acts against the defendant of comparable seriousness were nevertheless retained or rehired, or statistics as to the defendant's employment policies and practices. *McDonnell Douglas*, 411 U.S. at 805. Defendant does not dispute this. Doc. 20 at 6-7.

Under the above burden-shifting framework, the information Plaintiff seeks to discover through Request No. 12 is relevant to making a valid comparison with other comparators and to demonstrating Defendant's nondiscriminatory reason was a pretext for discrimination. *See Washington*, 567 F. App'x at 751-52; *McDonnell Douglas*, 411 U.S. at 805; Doc. 19 at 6. As Plaintiff points out, in the context of employment discrimination, the courts have applied more liberal discovery rules. *Wells v. Xpedx*, No. 8:05-cv-2193-T-EAJ, 2007 WL 1200955, *6 (M.D. Fla. Apr. 23, 2007) (citing *Sweat v. Miller Brewing Co.*, 708 F.2d 655, 658 (11th Cir. 1983)). A plaintiff who bears the burden to prove the defendant's proffered reasons are pretextual "should not normally be denied the information necessary to establish that claim." *Marshall v. Westinghouse Elec. Corp.*, 576 F.2d 588, 592 (11th Cir. 1978). To make a valid comparison with proper comparators and to show pretext under the *McDonnell Douglas* framework, Plaintiff needs to discover if other Operations Supervisors have engaged in similar or same conduct as Plaintiff's and if Defendant

has disciplined any of them at all. *See McDonnell Douglas*, 411 U.S. at 805; *Sweat*, 708 F.2d at 658 (holding that statistical information regarding the sex and age of persons employed by the defendant for a period of seven (7) years is discoverable because the information may be relevant to a showing of pretext even in a case alleging an individual instance of discrimination). Therefore, the scope of the request cannot be limited to formal disciplinary records of other Operations Supervisors whom Defendant actually had disciplined. *See McDonnell Douglas*, 411 U.S. at 805; Doc. 20 at 8-9.

In addition, unlike the cases Defendant cites to, Plaintiff is seeking to discover the disciplinary records of other Operations Supervisors for insubordination. *Cf. Simionescu*, 482 F. App'x at 431 (finding that the documents pertaining to other employees are not relevant because other employees occupied a different position from the plaintiff or had not received comparable negative reviews of their job performance). Furthermore, as Defendant admits, Request No. 12 asks Defendant to search through a file of ninety-two (92) Operations Managers. Doc. 20 at 9; *cf. Marshall*, 576 F.2d at 592 (finding that the discovery request is overly broad because the request encompassed about 7,500 employees).

The scope of the request, however, should be limited to Plaintiff's formal employing unit, the Miami terminal, as Defendant argues. Doc. 20 at 8. In a case of an individual complaint, "the most natural focus is upon the source of the complained of discrimination – the employing unit or work unit." *Earley v. Champion Int'l. Corp.*, 907 F.2d 1077, 1084 (11th Cir. 1990). To expand discovery

beyond the local employing unit, the plaintiff must demonstrate "particularized need and likely relevancy." *Wells*, 2007 WL 1200955, at *6. Relevant factors to the decision allowing broader discovery are "the number and geographic dispersion of the employer's facilities, similarities or differences in the work performed at different facilities, and whether or not a common decision maker is involved in employment decisions." *Id.* Here, the only factor Plaintiff argues in favor of expanding the discovery scope is that the Regional Vice President and the Human Resources Director were involved in the decision by approving the recommendation of the Branch Manager to terminate Plaintiff. Doc. 19 at 10. That alone is not sufficient to expand the scope of discovery to include the entire Region 4. *Chatman v. National R.R. Passenger Corp.*, 246 F.R.D. 695, 698 (M.D. Fla. 2007) (holding that in the employment discrimination case, the higher-level management's approval of the recommendation to terminate the plaintiff alone is not sufficient to expand the discovery scope to include the entire division).

ACCORDINGLY, it is hereby

**ORDERED:**

Plaintiff's Motion to Compel (Doc. 19) is **GRANTED in part**. The geographic scope of Plaintiff's Request for Production No. 12 is limited to the Miami terminal. Defendant shall have up to and including **October 31, 2016** to produce responsive documents to Plaintiff's Request for Production No. 12.

**DONE** and **ORDERED** in Fort Myers, Florida on this 20th day of October, 2016.

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record